United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 24, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-50598

_____

CAROLYN KNOWLES, ET AL.,

Plaintiffs,

CAROLYN KNOWLES; JOE RODRIGUEZ, JR.,

Plaintiffs-Appellants,

versus

CITY OF WACO, TEXAS,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Western District of Texas
No. 1:04-CV-430

---

Before JONES, Chief Judge, and WIENER and PRADO, Circuit Judges.

EDITH H. JONES, Chief Judge:

Appellants Carolyn Knowles and Joe Rodriguez, Jr. filed suit in district court challenging the facial constitutionality of two city ordinances that threaten their ability to protest peacefully near an abortion clinic in Waco, Texas. The district court dismissed their claims. Because the challenged ordinances are unconstitutional time, place, and manner regulations, we REVERSE the judgment of the district court and remand for entry of appropriate relief against the City.

## I.  BACKGROUND

Appellants pray, display anti-abortion signs, distribute literature, and counsel clinic clients on the public sidewalk outside an abortion clinic in Waco, Texas.  Rodriguez has been demonstrating outside the clinic for over ten years.

The clinic is located in a "school zone," an area subject to two ordinances challenged in this action:  § 25-133(c) of Waco's Code of Ordinances ("School Zone ordinance"); and § 25-266 of Waco's Code of Ordinances ("Parade ordinance").  Waco characterizes both ordinances as traffic regulations.[1]  The challenged School Zone ordinance provides:

> Sec. 25-133. School zones and crossing speed limits; street activity and parades restricted.
>
> * * *
>
> (c) Street activity and parades are prohibited within school zones . . . during the hours that school zones and crossing speed limits are in effect or when warning lights are flashing. Street activity shall mean a dance, party, demonstration, or any other type of public assemblage, where persons are collected together in one place, and the collection of persons is reasonably anticipated to obstruct the normal flow of traffic upon a public street, sidewalk, or other public right of way. Parade shall mean a procession of pedestrians, vehicles and animals or any combination thereof along or upon a street or sidewalk, park or other public place, which does not comply with normal and usual traffic regulations or controls. The term parade shall also include a race or competition of any kind, which is reasonably anticipated to obstruct the normal flow of traffic upon a public street, sidewalk, or other public right of way.

The Parade ordinance provides:

---

[1]    See WACO, TEX., CODE OF ORDINANCES chap. 25 ("Traffic and Vehicles").

2

Sec. 25-266. Permit required; exceptions.

(a) No person shall engage in, participate in, aid, form, or start any parade or other street activity without first applying for and obtaining from the city a permit for that parade or street activity.

(b) The requirement to obtain a permit shall not apply to the following:

(1) Funeral processions, which shall be regulated by section 25- 279.

(2) Students going to and from school classes or participating in educational or recreational activities under the immediate direction and supervision of the proper school authorities.

(3) A governmental agency acting within the scope of its functions.

(4) Processions or demonstrations at a fixed location which is not a street or sidewalk.

Because the School Zone ordinance prohibits "parades" and "street activity" in school zones only when school zone speed limits are in effect or warning lights are flashing, such activities are permitted there at other times subject, however, to the Parade ordinance's pre-activity permit requirement. Appellants have engaged and plan to engage in both "street activity" and "parades," as defined by the ordinances. Their activity does not fall within any of the exceptions to the parade permit requirement, nor are they protected by the extratextual "wingspan" exception, the City's interpretation that excludes from the School Zone ordinance people gathered together in school zones who remain at least one arm's length apart from each other.

3

The City passed the School Zone and Parade ordinances in response to a series of demonstrations that allegedly caused traffic problems and compromised the safety of school children. The recitals in and preamble to Ordinance No. 2004-0541, parts of which were eventually codified as the School Zone and Parade ordinances, reflect these traffic and safety concerns:

> WHEREAS, the health, safety and welfare of persons who use the public rights of way is of paramount importance in the regulation of the public rights of way; and
>
> WHEREAS, those persons who engage in street activity in certain rights of way pose a serious risk and danger to themselves and users of the public rights of way, as well as impede the orderly flow of traffic; and
>
> WHEREAS, those persons who engage in street activity in certain public rights of way located in school zones adjacent to schools during the hours buses and parents are dropping off or picking up children pose a serious risk and danger to the children arriving or leaving schools, as well as impede the orderly flow of traffic; and
>
> WHEREAS, the City Council wishes to impose reasonable time and place regulations to safely and effectively control the public rights of way but also provide adequate opportunities for street activities in areas and at times when the risk of danger to children and other users of the public rights of way is lessened.[2]

In March 2004, Waco cited approximately twenty of Appellants' co-demonstrators for violating a former, broader version of the School Zone ordinance.[3] Fearing that they would be

---

[2] WACO, TEX., CODE OF ORDINANCES No. 2004-0541. Waco incorporated these recitals into the Street Activity and Parade ordinances. See id.

[3] Under the former School Zone ordinance, "street activity" meant "a dance, party demonstration, or any other type of assemblage, which is held in or makes use of a street or sidewalk." The previous version lacked the qualifier that to be covered, activity must be "reasonably anticipated to obstruct the

4

cited next, Appellants filed this lawsuit in June 2004, seeking relief against the challenged ordinances based on the First Amendment. In September 2004, Waco amended the ordinances to their present form; it then moved for summary judgment, arguing that the amendments mooted Appellants' claims. Appellants proceeded to challenge the facial constitutionality of the new versions of the School Zone and Parade ordinances.[4] After taking into account the Appellants' amended claims and Waco's response, the district court denied Appellants' summary judgment motion and dismissed all claims. Appellants' appeal is before us.

## II. DISCUSSION

Whether the district court erred in denying Appellants' motion for summary judgment and dismissing their claims raises issues that we review de novo, applying the same legal standards as the district court. Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 403 (5th Cir. 2004). Appellants maintain that the School Zone and Parade ordinances are unconstitutional time, place, and manner regulations, are substantially overbroad, and are vague. Because we hold that both ordinances are invalid time, place, and manner

---

normal flow of traffic upon a public street, sidewalk, or other public right of way." WACO, TEX., CODE OF ORDINANCES § 25-133(c) (repealed). Similarly, the former ordinance's definition of "parade" did not limit coverage to parades that do "not comply with normal and usual traffic regulations or controls." Id.

[4] In their amended complaint, Appellants also challenged the facial constitutionality of § 25-267 of Waco's Code. That claim is not before the panel in this appeal.

regulations, we find it unnecessary to reach Appellants' over-breadth and vagueness arguments.

Appellants wish to continue their peaceful protests against abortion while reaching out to clinic employees and clients. The optimum time to protest coincides with school hours, precisely when the School Zone ordinance's potential ban is in effect. "Public streets a[re] the archetype of a traditional public forum" and from "time out of mind . . . have been used for public assembly and debate." Frisby v. Schultz, 487 U.S. 474, 480, 108 S. Ct. 2495, 2500 (1988) (quotation marks and citations omitted). Thus, the rights of the government to limit First Amendment activity in a public forum are "sharply circumscribed." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S. Ct. 948, 954 (1983). But

> even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753 (1989) (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S. Ct. 3065, 3069 (1984)).

The district court determined, and Appellants do not seriously dispute, that the ordinances are content-neutral. At issue, therefore, are Appellants' contentions that neither

6

ordinance is narrowly tailored and that they fail to leave open ample alternative channels for communication. The broad outline of the standards for these contentions is well settled. A regulation "is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." See Frisby, 487 U.S. at 485, 108 S. Ct. at 2503. If "a substantial portion of the burden on speech does not serve to advance" the ordinance's stated goals, then the ordinance is not narrowly tailored. See Ward, 491 U.S. at 799, 109 S. Ct. at 2758. Nevertheless, the regulation "need not be the least restrictive or least intrusive means of furthering the government's interest." Id. at 798, 109 S. Ct. at 2757. As to alternative avenues of communication, "[w]hile the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 812, 104 S. Ct. 2118, 2132 (1984). Against this background, we assess each ordinance.

## A. School Zone Ordinance

An ordinance infringing the right to demonstrate peacefully on public sidewalks must serve and narrowly promote significant government interests. Waco's asserted interests in protecting school children and citizens on public roads are

7

generically significant.  Appellants nevertheless challenge whether these interests are actually subserved by the School Zone ordinance because, they aver, Texas law already makes it unlawful to obstruct or disrupt school activities.  See TEX. EDUC. CODE §§ 37.123, 37.124.  Redundancy would seem to argue more in favor of than against the City's sincere commitment, but in any event, the state and city provisions are not clearly redundant.  Appellants' quarrel on this point fails.

To evaluate whether the School Zone ordinance is narrowly tailored, "we must consider the city's authoritative constructions of the ordinance, including its own implementation and interpretation of it."  See Forsyth County v. Nationalist Movement, 505 U.S. 123, 131, 112 S. Ct. 2395, 2402 (1992).  Waco has authoritatively interpreted the School Zone ordinance to embody a "wingspan" exception for people gathered together or walking who are at least an arm's length apart from each other.  While no doubt intended to soften the impact of the School Zone ordinance, the wingspan exception actually complicates the analysis.

The School Zone ordinance assertedly protects children by prohibiting activities that could "distract" drivers during the times that school zones are active.  The wingspan exception, however, permits otherwise "distracting" street activity if the people so engaged in a school zone stand at arm's length.  Clearly, "street activity" conducted one arm's length apart may present precisely the same risk to drivers and children as "street

8

activity" by closer-packed participants. The wingspan exception allows a thousand soldiers to march down the sidewalk if they keep the requisite distance from each other, while the ordinance would criminalize the actions of a few people holding up signs while standing next to each other. Given its capricious impact, the wingspan exception does not further narrow tailoring.

Apart from the wingspan exception, the School Zone ordinance is not narrowly tailored because the ordinance "sweeps far more broadly than is necessary to further the city's legitimate concern" of enhancing the safety and welfare of schoolchildren and others using Waco's public rights of way. See Ward, 491 U.S. at 801, 109 S. Ct. at 2759. The ordinance prohibits "street activity" and "parades" within school zones during designated times. WACO, TEX., CODE OF ORDINANCES § 25-133. "Street activity" includes "public assemblage." Id. Although "public assemblage" is undefined in the ordinance, the record and the text of the ordinance indicate that it may encompass just two individuals standing or sitting in one place.[5] Typically, two people standing or sitting in one place do not "distract" passing motorists.

As for "street activity," the only determinant of a violation is whether, during the prescribed times, "the collection of persons is reasonably anticipated to obstruct the normal flow of

---

[5]    At oral argument, the City never denied the contention that a public assemblage by only two people could be encompassed by the ordinance. Rather, Waco seemed to concede that it is not the number of people that matter, but whether they were reasonably anticipated to obstruct the sidewalk or street.

9

traffic upon a public street, sidewalk, or other public right of way." Id. Although the modifier "reasonable" is within the bounds of the law, its coupling with the "anticipation" of "obstructing the normal flow of traffic on a street or sidewalk" adds troublesome layers of uncertainty to determining the scope of the ordinance. There is no doubt the ordinance could criminalize these Appellants' benign expressive behavior, but the larger problem is that no one can be certain what conduct it covers. A "reasonable" "anticipation" of "obstruction" can be formulated without noise, without physical obstruction of streets or sidewalks or passersby, and without disorderly conduct. In short, the law may be violated by the core constitutional acts of peaceful expressive activity or peaceable assembly alone.

Additionally, the definition of a parade in this ordinance is open-ended, consisting of "a procession of pedestrians, vehicles, and animals or any combination thereof along or upon a street or sidewalk, park or other public place, which does not comply with normal and usual traffic regulations or controls." WACO, TEX., CODE OF ORDINANCES § 25-133. Again, as few as two people can be swept within its ambit. The City Attorney even conceded that a covered "parade" may consist of a man walking two dogs. That a parade is not covered if it follows "normal and usual traffic regulations and controls" is unhelpful to people who will be using sidewalks. And even if some "traffic" regulations pertain to sidewalks, what are the "normal" and "usual" regulations? Does

10

this qualifier refer only to "regulations" or also to "normal" sidewalk conditions, such that a group of, say, five people could be considered "abnormal"? The School Zone ordinance potentially criminalizes such a broad range of expressive and legitimate conduct that it is hardly tailored at all, much less narrowly tailored to prevent distraction of motorists when school zone rules are in effect.

Because we hold that the School Zone ordinance is not narrowly tailored, and thus unconstitutional, it is unnecessary to determine whether the ordinance leaves open ample alternative channels for the Appellants to communicate their message. See Ward, 491 U.S. at 791, 109 S. Ct. at 2753.

## B. Parade Ordinance

The Parade ordinance defines "parade" and "street activity" in the same, overbroad way as does the School Zone ordinance.[6] Accordingly, the ordinance may be interpreted to require a prior permit for the activity of as few as two people.[7] Other circuits have held, and we concur, that ordinances requiring

---

[6] WACO, TEX., CODE OF ORDINANCES § 25-133(c) (defining "parade" for the School Zone ordinance); § 25-265 (defining "parade" for the Parade Ordinance, but with slight differences not relevant here); § 25-133(c) (defining "street activity" for the School Zone ordinance); § 25-265 (defining "street activity" for the Parade Ordinance).

[7] The City cites McDonald v. City of Chicago, 243 F.3d 1021 (7th Cir. 2001), as upholding a similar ordinance, but we fail to see McDonald's relevance. The parade there sought to move through busy downtown streets, while sidewalk protesters are the Appellants here. The appellate issues in McDonald centered on procedural safeguards for a parade license, not, as here, on the definition of a "parade" and its reach into minimal-sized gatherings.

11

a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest.  See Douglas v. Brownell, 88 F.3d 1511, 1524 (8th Cir. 1996) (ten persons); Grossman v. City of Portland, 33 F.3d 1200, 1202-06 (9th Cir. 1994) (six persons); Cmty. for Creative Non-Violence v. Turner, 893 F.2d 1387, 1392 (D.C. Cir. 1990) (ordinance requiring two or more people speaking or proselytizing together in any above-ground areas of the Metro to obtain a permit was not narrowly tailored because many such small-numbered groups "would not interfere meaningfully" with the government's asserted interests).

The Parade ordinance is also unconstitutional under this court's decision in Beckerman v. City of Tupelo, 664 F.2d 502 (5th Cir. 1981).  Despite the Parade ordinance's general permit requirement for "parades" or "street activity" on Waco's public ways, the Ordinance exempts funeral processions; "[s]tudents going to and from classes or participating in educational or recreational activities under the immediate direction and supervision of the proper school authorities";  "a governmental agency acting within the scope of its functions"; "[s]idewalk processions which observe and comply with traffic regulations and traffic-control devices, utilizing that portion of a sidewalk farthest from the street"; and "[p]rocessions or demonstrations at a fixed location which is not a street or sidewalk."  WACO, TEX., CODE OF ORDINANCES § 25-266.  Under Beckerman, it is the exceptions that condemn this ordinance.

12

Beckerman struck down Tupelo's parade permit ordinance because it contained two exceptions nearly identical to those in the Waco ordinance. See Beckerman, 664 F.2d at 513, 517 (noting exceptions for "students participating in educational activities provided that they are under the immediate direction and supervision of school authorities," and a "governmental agency acting within the scope of its functions."). Examining these exceptions under the First Amendment and the Equal Protection Clause, the court reasoned that, "[b]ecause the City is so willing to disregard the traffic problems" that could be caused by school children and government agencies engaging in "parade[s], procession[s] or other public demonstration[s]," it could not "accept the contention that traffic control is a substantial interest" that justified Tupelo's parade permitting scheme. Id. at 513. Waco, however, attempts to distinguish Beckerman. According to Waco, the Tupelo ordinance exempted student and government marchers; the Parade ordinance, on the other hand, exempts all students "going to and from classes or participating in educational or recreational activities," and all government agencies acting within the scope of their official functions.

The City misreads Beckerman. First, although the Beckerman court described the exceptions to Tupelo's parade permit scheme as applying to student and government "marchers," the actual language of the exceptions to Tupelo's ordinance is almost identical to the exceptions to the Parade ordinance. See

13

Beckerman, 664 F.2d at 517.  Second, as noted supra, Tupelo's justification for the parade permitting scheme at issue in Beckerman and Waco's justification for the Parade ordinance are the same — traffic and pedestrian safety.  Accordingly, Waco's claims that the exceptions to the Parade ordinance are consistent with the ordinance's goal of promoting traffic safety are not justified in distinction from Beckerman.

### III.  CONCLUSION

For the reasons stated above, we hold that the School Zone and Parade ordinances are unconstitutional time, place, and manner regulations.  The court erred in denying Appellants' motion for summary judgment.  We REVERSE and REMAND for entry of appropriate relief in favor of Appellants.