REVISED FEBRUARY 5, 2010

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2010

Charles R. Fulbruge III
Clerk

No. 08-20616

SERVICE EMPLOYEES INTERNATIONAL UNION, Local 5; TOMASA COMPEAN; AUSTRABERTA RODRIGUEZ

Plaintiffs - Appellants

v.

CITY OF HOUSTON

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, WIENER, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A labor union in Houston, Texas sought permits from the City for parades and rallies in support of a strike. The City gave only partial approval. The union sued, claiming the ordinances under which the permits were processed violated the First Amendment. The district court granted some relief. We proceed slightly further in invalidating the City's rules than did the district court but leave most of the City's scheme intact. We AFFIRM in part, REVERSE in part, and REMAND.

## I. FACTS

The Service Employees International Union, Local 5 ("SEIU") is the

plaintiff. Among its members are 5,300 janitors in Houston. While in contract negotiations in October through November 2006, SEIU staged a strike. The goals of the strike were to be furthered by parades, marches, and rallies in downtown Houston. The target audience for these highly visible protests was those who worked in the Houston office buildings in which many SEIU janitors were employed. Optimal visibility, therefore, would have been in the middle of the workday. SEIU members planned to use megaphones and bullhorns to amplify their message.

SEIU applied for permits to conduct the parades, marches, and rallies it planned. The City denied several of its requests. SEIU's suit challenged three of the ordinances that restricted its plans. A preliminary injunction was entered permitting SEIU to proceed with some of its planned activities. The labor dispute has been resolved. The legal dispute continues.

A summary of the relevant ordinances is where we begin.

A. The Ordinances

The three challenged City ordinances require permits for certain categories of noise, authorizing parades, and controlling some uses of parks. During the course of the litigation, there have been amendments to some of the ordinances. Because SEIU seeks to have us invalidate many of the restrictions, the relevant language is found in the latest version of the ordinances that has been included in the record. A sketch of each current ordinance follows.

1. The Sound Ordinance

The Sound Ordinance bans noise "that annoys, disturbs, injures, or endangers the comfort, repose, health, peace, or safety of others." Sound Ordinance, Houston, Tex., Code of Ordinances ch. 30, § 30-2(a). There are several enumerated exemptions. Among them is an exemption for church bells "when

used as part of a religious observance or service during daytime hours," but only if limited to no more than five minutes per hour. Id. § 30-9(j). Also exempted are sounds produced by activities on public parks and playgrounds, and on public or private school grounds, "including, but not limited to, school athletic and school entertainment events." Id. § 30-9(k).

Sound amplification, including by a bullhorn or a megaphone, is generally prohibited. Id. § 30-4(a). Amplification of sound above a certain decibel level requires a permit. Id. § 30-8. The Sound Ordinance limits permits for the same location to two per thirty-day period. Id. § 30-8(a)(4).

### 2. The Parade Ordinance

The City regulates processions on its roadways. Parade Ordinance, Houston, Tex., Code of Ordinances ch. 45, art. IX. The regulation defines the covered processions this way:

> Parade means a procession of pedestrians, vehicles, or animals, or any combination thereof, traveling in unison along or upon a street, road, or highway, organized and conducted for the purposes of attracting the attention of the general public and/or expressing or celebrating views or ideas by use of verbal, visual, literary, or auditory means of communication.

Id. ch. 45, art. IX § 45-231.

That definition of "parade" closes with the statement that "a procession of vehicles operated in compliance with ordinary traffic laws or a procession of pedestrians along or upon public sidewalks or private property," is not a parade under the terms of the Ordinance. Id.

Parades are prohibited except on issuance of a permit by the City. Id. § 45-232(a). A traffic and security control plan may be required of the permit-seeker if it opts against using City-provided police services. Id. § 45-232(g). Weekday

parades in downtown Houston may begin either at 10:00 a.m. or 2:00 p.m., must last no more than an hour, and cannot extend for more than ten street intersections.  See id. § 45-233(b)(2).

### 3. The Parks Ordinance

Permits generally are not required to use City parks but are necessary in order to hold "any public meeting or gathering" in certain designated locations. Parks and Recreation Ordinance, Houston, Tex., Code of Ordinances ch. 32, art. III. § 32-61(a).  Some of those locations are described generically – "building or facility for which a rental fee is imposed," or a "baseball field, . . . or other area specifically designated and equipped for sporting or recreational events . . . ." Id. § 32-61(a)(1) & (2).  Gatherings in certain specific locations, such as the Houston Zoo or the Arboretum, also require permits.  Id. § 32-61(a)(3) & (4).  A catch-all provision concludes the listing: "Any other improved and specially maintained area so designated by a rule or regulation promulgated pursuant" to section 32-5 of the Ordinances.  Id. § 32-61(a)(5).  A map is to be maintained by the parks director indicating the areas requiring permits for "public meetings or gatherings."  Id. § 32-61(b).  The City concedes that no such map exists.

The Parks Ordinance requires the permit to be issued if the objective requirements for the permit are met, but denied if certain subjective failings exist.  Id. § 32-64(1)-(5).  The latter failings include the "size and nature of the meeting is inappropriate for the designated area requested" or the "proposed function would be disruptive to or incompatible with, or cause an adverse effect on the use of the designated area by others."  Id. § 32-64(4) & (5).

## B.  Claimed Deficiencies in Ordinances

The following are the features of the ordinances that are still in issue and are said to have unconstitutionally limited SEIU's activities:

(1) The Sound Ordinance's limit of two permits for any single location in a thirty-day period.

(2) The Parade Ordinance's restrictions on downtown weekday parades to two one-hour windows.

In addition to specific features of the ordinances that impacted SEIU, it is also claimed that each ordinance is unconstitutional in its entirety for more general reasons:

(3) The Sound Ordinance contains content-based exceptions that are not narrowly tailored.

(4) The Parade Ordinance's definition of a "parade" is contest-based, vague and not narrowly tailored.

(5) The Parks Ordinance's failure to define what constitutes a "public meeting or gathering" and to designate the relevant areas in parks create vague and inadequately tailored provisions.

The claims before the district court were more numerous. On some, relief was granted and the City has not appealed. On others, no ruling on summary judgment was made. SEIU voluntarily dismissed the latter in order to proceed with an appeal. The only remaining challenges are what we have just described.

C. District Court Proceedings

On October 19, 2006, SEIU filed suit in the U.S. District Court for the Southern District of Texas challenging the constitutionality of the three ordinances. Two individuals and SEIU are the current plaintiffs, all of whom are meant when we refer to SEIU, unless in context it is clear that we are referring only to the Union. The only current defendant is the City.

SEIU contended that all three ordinances were facially invalid in their entirety. SEIU sought a temporary restraining order and preliminary injunction

barring the City from enforcing portions of the Ordinances. A preliminary injunction was granted on October 23, 2006, prohibiting enforcement against SEIU of certain provisions of the Parade and the Sound Ordinances.

In August 2007, the parties filed cross-motions for summary judgment. On March 31, 2008, the motions were granted in part and denied in part. The court invalidated (1) a Parks Ordinance provision requiring permit-seekers to obtain additional security, concluding it to be impermissibly content-based and vague, and (2) a Parade Ordinance provision requiring ten-days notice for obtaining a parade permit which was held to be a prior restraint on speech. The district court also found that an as-applied challenge to a provision of the Sound Ordinance raised a genuine issue of material fact and denied summary judgment as to that issue. The court granted summary judgment to the City on all other claims and denied damages.

SEIU dismissed all claims on which the district court did not rule. It then appealed on the issues we earlier identified. There is no cross-appeal.

## II. DISCUSSION

This court reviews a grant of summary judgment de novo. Sossamon v. Lone Star State of Tex., 560 F.3d 316, 326 (5th Cir. 2009). We apply the same standards in reviewing the evidence and applying the law as the district court. Id. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). If the movant demonstrates that there are no genuine issues of material fact, the burden shifts to the opponent of the motion to establish that there are. Sossamon, 560 F.3d at 326.

On appeal, SEIU arguments raise four issues of First Amendment

jurisprudence: content-based regulations; narrowly tailored regulation of time, place, and manner of expression; prior restraints; and vagueness. We begin by reviewing First Amendment principles relevant to those issues.

A. First Amendment Principles

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. It applies to the states through the Due Process Clause of the Fourteenth Amendment. Chiu v. Plano Indep. Sch. Dist., 260 F.3d 330, 344 n.8 (5th Cir. 2001) (citing cases). The state is "sharply circumscribed" in its right to restrain expression in "places which by long tradition or by government fiat have been devoted to assembly and debate." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). Among such places identified by tradition or fiat are "streets and parks." Id. Generally, a park or a street will be considered a traditional "public forum" in which "government entities are strictly limited in their ability to regulate private speech . . . ." Pleasant Grove City, Utah v. Summum, 129 S. Ct. 1125, 1132 (2009) (citing Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U.S. 788, 800 (1985)).

The foundation on which we build our understanding is that a municipality may regulate expressive conduct in a public forum to protect public health, safety, or welfare. Beckerman v. City of Tupelo, Miss., 664 F.2d 502, 509-10 (5th Cir. Unit A Dec. 1981). If a content-based regulation is to be allowed, the state "must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Perry, 460 U.S. at 45 (citing Carey v. Brown, 447 U.S. 455, 461 (1980)). That standard is one of "strict scrutiny." Chiu, 260 F.3d at 344-45. A content-based regulation of speech will not satisfy strict scrutiny if there is a less restrictive means that "would be at least as effective in achieving the legitimate purpose" that is being served. Reno

v. ACLU, 521 U.S. 844, 874 (1997).

A content-based regulation has been defined as one that creates distinctions between "favored speech" and "disfavored speech." Horton v. City of Houston, Tex., 179 F.3d 188, 193 (5th Cir. 1999). Such regulation also can be identified when it creates a "substantial risk of eliminating certain ideas or viewpoints" from the public forum. Id. A regulatory scheme that requires the government to "examine the content of the message that is conveyed" is content-based regardless of its motivating purpose. Ark. Writers' Project, Inc. v. Ragland, 481 U.S. 221, 230 (1987) (quoting FCC v. League of Women Voters of Calif., 468 U.S. 364, 383 (1984)).

On the other hand, content-neutral regulations of "time, place, and manner of expression" in a public forum are permitted when they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Perry, 460 U.S. at 45. Using this test to judge the constitutionality of a regulation is an application of "intermediate scrutiny." Horton, 179 F.3d at 192-93. In the context of intermediate scrutiny, narrow tailoring does not require that the least restrictive means be used. Ward v. Rock Against Racism, 491 U.S. 781, 798 (1989). As long as the restriction promotes a substantial governmental interest that would be achieved less effectively without the restriction, it is sufficiently narrowly tailored. Id. at 799.

Regulations that require speakers to obtain permits before speaking – prior restraints –  are disfavored and must be confined by "narrow, objective, and definite standards." Shuttlesworth v. City of Birmingham, Ala., 394 U.S. 147, 150-51 (1969). "The relevant question is whether the challenged regulation authorizes suppression of speech in advance of its expression." Ward, 491 U.S. at 795 n.5 (emphasis in original). There is a "heavy presumption" of invalidity

for prior restraints that grant the licensing authority broad discretion. Forsyth County, Ga., v. Nationalist Movement, 505 U.S. 123, 130 (1992).

Finally, regulations should not be vague. Because the First Amendment needs "breathing space," government regulation must be drawn with some specificity. Howard Gault Co. v. Tex. Rural Legal Aid, Inc., 848 F.2d 544, 559 (5th Cir. 1988). Regulation of speech must be through laws whose prohibitions are clear. Flexibility in a statute is permissible, but the statute must provide "fair notice" so that its prohibitions may be avoided by those who wish to do so. Grayned v. City of Rockford, 408 U.S. 104, 110-12 (1972). Vagueness challenges usually must show that the law has a capacity "to chill constitutionally protected conduct, especially conduct protected by the First Amendment." Roark & Hardee LP v. City of Austin, 522 F.3d 533, 546 (5th Cir. 2008) (quoting United States v. Gaudreau, 860 F.2d 357, 360 (10th Cir. 1988)).

Vagueness can be ameliorated by a state court's authoritative interpretations, if they provide sufficient clarity. See Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973). We also have searched in some situations for binding limits placed on an ordinance by a municipality's governing body. Beckerman, 664 F.2d at 509. There is, though, no authority lying in a federal court to conduct a narrowing of a vague state regulation. Id. We take the state and local regulations as we have been given them.

It is against this constitutional backdrop that we consider SEIU's challenge to the three Houston ordinances.

B. Constitutionality of the Three Houston Ordinances

We will first discuss the relevant sections of the Sound Ordinance, then those of the Parade Ordinance, and finally, those of the Parks and Recreation Ordinance. There will be some references to prior discussions as we proceed.

9

1. Sound Ordinance

SEIU has two kinds of complaints about the Sound Ordinance. The broad challenge is that content-based exceptions to the permitting requirements cause the Ordinance not to be a narrowly tailored regulation of time, place, and manner of expression. The narrower challenge concerns a limit on the number of sound amplification permits granted per month.

We start with claims that some exceptions are content-based. The Houston Sound Ordinance, section 30-9, lists sixteen sounds that do not require permits, classifying them as "defenses" to charges of violations of the Ordinance. These sixteen defenses include sounds generated by church bells, school-related activities, construction, and events at public parks.

SEIU does not argue that these defenses interfered with its planned activities. That is important because a lawsuit is not a general license for a federal court to examine all provisions of a municipal ordinance and decide if any are flawed. First Amendment challenges do not eliminate the need for a party to demonstrate it has constitutional standing. SEIU must show that "(1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." Houston Chronicle Publ'g Co. v. City of League City, Tex., 488 F.3d 613, 617 (5th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

These elements of injury, causation, and redressability are an "irreducible constitutional minimum," Lujan, 504 U.S. at 560, no more subject to being waived in First Amendment cases than in any other. Reflective of this, the Supreme Court carefully examined claims against municipal ordinances to determine, provision by provision, if there were a claimant with standing to

challenge it.  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 233 (1990).

Beyond this minimum, certain court-created requirements for standing exist, ones arising from judicial prudence and not from the constitution. Ward v. Santa Fe Indep. Sch. Dist., 393 F.3d 599, 606 (5th Cir. 2004). The one potentially relevant here is usually called "third party standing," or more descriptively, that litigants must assert their own legal rights and not those of others.  Id. (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)).

The prudential consideration of third-party standing is not applied when a plaintiff demonstrates that a provision that validly restricts its own speech is overbroad.  Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956-57 (1984); ERWIN CHEMERINSKY, CONST. LAW: PRINCIPLES AND POLICES § 2.5, at 87 (3d ed. 2006).  An overbroad statute validly regulates some expressive conduct but also reaches substantial protected speech.  City of Houston, Tex. v. Hill, 482 U.S. 451, 456-57 (1987).  If there is "a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court."  Vill. of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 634 (1980). The refusal to apply the usual bar to asserting the rights of third-parties is because "protected speech . . . may be inhibited by the overly broad reach of the statute."  Id.

We agree with the clarity brought to the issue by one of our sister circuits that the plaintiff must establish injury under a particular provision of a regulation that is validly applied to its conduct, then assert "a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision."  CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1271 (11th Cir. 2006) (emphasis added).  Thus, if SEIU is limited by

one provision of an ordinance and makes a facial challenge due to the overbreadth of a different provision, there is no constitutional standing, i.e., there is no "case or controversy," as to the separate provision.

We now apply these principles. As to the Sound Ordinance, SEIU claims that provisions regarding historical re-enactments, construction noises, noises from parks and school grounds, and church bells, are content-based. No overbreadth challenge is made on appeal, which means SEIU has no standing to seek to vindicate the rights and interests of others as to them.

It is argued, though, that these defenses so undermine the reasonableness of the entire Ordinance as to prevent it from being a narrowly tailored regulation of time, place, and manner of expression. We examine the questioned defenses to determine how fundamentally whatever defects they may have would affect the reasonableness of the entire Sound Ordinance

We note that the district court held the Sound Ordinance to be content-neutral. Content-neutral restrictions are those that are "'justified without reference to the content of the regulated speech.'" Boos v. Barry, 485 U.S. 312, 320 (1988) (quoting Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 771 (1976)). Houston justifies its Sound Ordinance generally by noting that noise regulation is a legitimate state interest, and the City's prohibitions on certain sounds serve that interest.

Among the questioned exceptions is for "activities conducted on public parks, public playgrounds, and public or private school grounds. . . . " The City has not excepted noise that arises only from specific kinds of activity at those sites or excepted educational groups to make noise anywhere in the City on the basis of their status. Houston, Tex., Code of Ordinances ch. 30, § 30-9(k).

Construction noises are excepted from permit requirements, but,

presumably, building permits have been issued. See id. § 30-9(e). Other exceptions are for events occurring in facilities permanently erected for purposes of large-scale public events. See id. § 30-9(d)(1) & (3). Another exception is explained by the fact that the City likely lacks authority to regulate noise made by railroad operations or aircraft in flight. Id. § 30-9(f).

Most of the sounds that appear as "defenses" are the unavoidable consequences of daily life in a modern urban environment or emanate from other permitted or protectable speech events. The City does not have to regulate what is basically unregulatable, the municipal equivalent of a household trying to say it is unacceptable for a baby to cry. The argument that Houston must require permits for noises such as those generated at a playground, a sports stadium, and a construction site in order to make its Sound Ordinance proper is premised on a non-existent world. Allowing them does not bar Houston from requiring permits for other sounds. Within that context, most of the excepted sounds are a "traditional and generally unobtrusive aspect" of the urban environment. Stokes v. City of Madison, 930 F.2d 1163, 1171 (7th Cir. 1991).

If any of the exceptions identified by SEIU raises a question of being content-based, it is only the following two. One allows, without a permit, the ringing of "church bells or church chimes when used as part of a religious observance or service during daytime hours," for a maximum of five minutes per hour. Houston, Tex., Code ch. 30, § 30-9(j). The other provision is for noise produced by "patrons and participants using cannons and gunfire during historical battle re-enactments for which a pyrotechnic permit was obtained and the explosives were inspected by the fire marshal." Id. § 30-9(d)(4). Because the Ordinance excepts only cannon and gunfire sounds that are part of a "historical battle re-enactment," the content – the message – of the explosive conduct is said

to be relevant.

We know that protecting the public from excessive noise is a significant government interest. Ward, 491 U.S. at 796. The question is whether the Sound Ordinance is narrowly tailored in satisfying that interest. There has not been narrow tailoring if the ordinance "'sweeps far more broadly than is necessary to further the city's legitimate concern'" of noise control. Knowles v. City of Waco, Tex., 462 F.3d 430, 435 (5th Cir. 2006) (quoting Ward, 491 U.S. at 801).

What constitutes a reasonable, narrowly tailored regulation depends on a variety of factors, including the character of the place in which the regulation is enforced. Noise restrictions applicable to busy downtown centers will be viewed differently than those applicable to quiet residential neighborhoods. Grayned, 408 U.S. at 116. Greater or lesser efforts to minimize noise and traffic depending on the time of day and location in order to protect the "well-being, tranquility, and privacy of the home" have been held to be significant government interests. Ward, 491 U.S. at 796 (citation omitted).

In one of our precedents, we held that exceptions could invalidate ordinances by undermining the ostensible purpose of the measure, making them "unconstitutional time, place, and manner regulations." Knowles, 462 F.3d at 433 & 436. We considered a parade ordinance adopted by the City of Waco that exempted, with only minor variation, groups of students engaged in "educational or recreational" activities, "and all government agencies acting within the scope of their official functions." Id. at 436-37. Traffic control was the significant government interest said to motivate the ordinance, but we concluded that the breadth of the exceptions belied the argument that the ordinances were narrowly tailored for purposes of traffic flow and safety. Id.; see also Beckerman, 664 F.2d at 513 (striking down similar regulation as unconstitutional). The City of Waco

could offer no rational explanation of how the traffic disruption caused by one hundred students marching down the street was any different than the disruption caused by one hundred protestors doing the same. Knowles, 462 F.3d at 437. See also Beckerman, 664 F.2d at 514 (same).

In Knowles, the court struck down the entire parade ordinance. Knowles, 462 F.3d at 437. That remedy was necessary because the ordinance "potentially criminalizes such a broad range of expressive and legitimate conduct that it is hardly tailored at all," and certainly not narrowly tailored. Id. at 435.

In Beckerman, we found some provisions in a Tupelo, Mississippi parade ordinance to be a prior restraint, while others were overbroad or vague. Beckerman, 664 F.2d at 509, 511-16. The plaintiffs had not sought a permit, and the court stated that their challenges were "anticipatory." Id. at 506. Standing had not been challenged. We briefly reviewed precedents that allowed facial challenges to ordinances that provided overly broad discretion to officials. Id. Only some of the provisions were stricken, as opposed to the entire ordinance. Id. at 517. That was appropriate because, once substantial overbreadth is shown, only the offending portions should be stricken if that is practicable. Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 501-02 (1985).

We conclude that Houston's Sound Ordinance does not suffer from the kind of fundamental flaws identified in these precedents. It makes reasonable distinctions among categories in the level of disruption caused by noise that requires a permit and noises that come from exempted sources. Out of sixteen defenses, only two raise some analytical questions. Though churches are numerous, historical cannon fire presumably is not. These exceptions limit the reach of the Ordinance, a fact that does not equate to insufficiently narrow tailoring. If there are defects in the church bell and historical reenactment

15

exceptions, and we do not so conclude, they do not result in a fatal absence of narrow tailoring. If pruning of those two defenses is required by the First Amendment, it cannot be done in this suit.

SEIU has a personal stake in the remaining part of its challenge to the Sound Ordinance. It argues that a limitation of two permits per location per thirty-day period is invalid. Narrow tailoring is again the concern. SEIU argues that the Ordinance's failure to distinguish between the needs of different parts of the City in imposing the twice per thirty-days restriction is strong evidence that the Ordinance is not narrowly tailored. "'The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time.'" Reeves v. McConn, 631 F.2d 377, 384 (5th Cir. 1980) (quoting Grayned, 408 U.S. at 116).

In Reeves, we struck down a Houston ordinance banning all amplification in the "downtown business district" except between the hours of 1:00 p.m. and 7:00 p.m. on Sundays. Id. at 385. The City had argued that this limitation was justified "1) to prevent disruption of the normal business activity on the crowded streets in this district and 2) to prevent distraction of pedestrians and drivers . . . ." Id. at 384. Although we agreed that these were "proper" governmental interests, we concluded that "the blanket prohibition by which [the City] seeks to achieve those ends is far too broad." Id. We required that the City "tailor its ordinance to reach those activities that actually cause, or immediately threaten to cause, the consequences it fears." Id.

Here, the City argues that an underlying distinction between residential and non-residential areas is present in the Ordinance, as the maximum decibel levels vary at which a permit is required. It also claims that the Ordinance here is less restrictive than the ordinance in Reeves.

16

First, the fact that the City has made some distinctions, namely on the basis of decibel levels, highlights its failure also to adjust the number of permits to the different circumstances around the City. As in Reeves, the City must do more than enact blanket restrictions in furtherance of clearly legitimate, but inconsistently justified, interests in tranquility and repose. The maximum number and frequency of permits that might be reasonable for protests on a quiet neighborhood street is unlikely to be the same as is reasonable in already-noisy downtown Houston.

Second, the holding in Reeves did not depend on how restrictive the ordinance was in absolute terms. There are four or five Sundays per month, but Houston's Ordinance limits protests to twice per month. The City also claims it is significant that the Reeves ordinance banned all amplification, but that the Sound Ordinance here restricts (in nonresidential areas) only amplification above 68 decibels. Nothing in the record indicates, though, how such a level corresponds to unamplified conversation. The Ordinance itself suggests that the permitted decibel level is meant to be usual, unamplified voices. If so, then in practice this Ordinance provides no benefit over the one in Reeves.

The limit of two permits per location per thirty-day period is not narrowly tailored and is unconstitutional. The provision limited the Union's effort to amplify its downtown voice during its 2006 labor action. The Ordinance must differentiate among the needs and occupants of different parts of Houston and base frequency and time on such distinctions. See Reeves, 631 F.2d at 384 ("the nature of a place, the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable") (citation and quotation marks omitted).

2. The Parade Ordinance

SEIU contends generally that Houston's Parade Ordinance is unconstitutional because it is (1) too vague, (2) not content-neutral, and (3) not narrowly tailored.

The vagueness alleged is that the definition of parade is not clear as to the activities covered. We repeat the Ordinance's definition, that parades are

> a procession of pedestrians, vehicles, or animals, or any combination thereof, traveling in unison along or upon a street, road, or highway, organized and conducted for the purposes of attracting the attention of the general public and/or expressing or celebrating views or ideas by use of verbal, visual, literary, or auditory means of communication.

Houston, Tex., Code ch. 45, art. IX § 45-231. Excluded is a "procession of vehicles operated in compliance with ordinary traffic laws" or a procession of pedestrians along sidewalks or on private property. Id. SEIU contends that the Parade Ordinance gives no guidance on what constitutes "attracting the attention of the general public" or "expressing or celebrating views."

SEIU relies on a series of examples to demonstrate why the Parade Ordinance requires persons of common intelligence to guess at its meaning, i.e., the Ordinance is unconstitutionally vague. For example, SEIU contends that a procession of banner-bearing school buses on their way to a state athletic championship, escorted through intersections by police, may or may not constitute a parade under the Parade Ordinance. The Ordinance provides an answer to that example, because school buses following the ordinary rules of traffic would not constitute a parade. Id. § 45-231 (defining "Parade"). When such a procession requires a police escort and, albeit permissibly, runs red lights, the Parade Ordinance as written is triggered. Id.

The Parade Ordinance's application clearly turns on whether traffic laws will be followed while expressive or attention-seeking activity is occurring.

Despite the clarity of this part of the Ordinance, we realize the "imagination can conjure hypothetical cases in which the meaning of these terms will be in nice question. The applicable standard . . . is, rather, the practical criterion of fair notice to those to whom the statute is directed." Am. Commc'ns Ass'n, C.I.O. v. Douds, 339 U.S. 382, 412 (1950); see also McConnell v. Fed. Election Comm'n, 540 U.S. 93, 194 (2003) (holding a definition was not vague because its elements were "easily understood and objectively determinable").

The Parade Ordinance provides a discernible and objective standard.

SEIU next contends that the exceptions to the Parade Ordinance render it content-based. SEIU finds two faults in the definition of "parade" in section 45-231: (1) the section applies only to conduct "expressing or celebrating views or ideas," and (2) it contains an exemption for funeral processions.

With respect to the first distinction, SEIU contends that the focus on expressive content contradicts Houston's purported justification of traffic safety. Houston responds that SEIU's argument is misplaced because the content of the expressed views is irrelevant to enforcement of the Ordinance.

Enforcing the Parade Ordinance requires only that the authorities determine that a procession is expressing a message – any message, regardless of content – or intentionally attracting attention. An ordinance is content-neutral if it is "justified without reference to the content of the regulated speech," which means that enforcement would not require looking behind the simple fact that speech is occurring. See, e.g., Va. State Bd. of Pharmacy, 425 U.S. at 771. Enforcement of Houston's Parade Ordinance does not turn on whether paraders are protesting as opposed to celebrating. Cf. Kirkeby v. Furness, 92 F.3d 655, 659 (8th Cir. 1996) (ordinance regulated conduct intended to persuade or protest). Houston's Parade Ordinance treats parades the same regardless of the content

or subject of the message. The Parade Ordinance regulates a non-accidental procession as a method of distinguishing "parades" from the ordinary traffic of vehicles or pedestrians traveling along a road in the same direction.

With respect to SEIU's second perceived flaw, Houston contends that the Parade Ordinance no longer contains a funeral exception. Houston amended the Parade Ordinance's explicit exception for funeral processions after the filing of this lawsuit. Houston claims the amendment moots this part of SEIU's challenge. SEIU contends that, because Houston did not amend the Ordinances or the City's other funeral-specific provisions, the exception remains and the issue is not resolved. We find that the current Parade Ordinance does not except funeral processions. The 2006 version of the Ordinance explicitly did so, and that exception has been eliminated.

The definition of "parade" in section 45-231 can be understood to include funeral processions such that they, like other parades, are subject to its governance. Although chapter 45 of the Houston Code contains separate provisions governing funeral processions, none obviously exempts them from the Parade Ordinance's permit requirements. See Houston, Tex., Code ch. 45, art. IX § 45-251 et seq. Indeed, the definition distinguishes parades from processions of cars "operated in compliance with ordinary traffic laws." Id. § 45-231. A funeral procession in which cars following the lead car do not obey ordinary traffic laws would, by implication, require a permit. Accordingly, we hold the change in the Houston Parade Ordinance and related provisions has mooted this aspect of SEIU's challenge.

Finally, SEIU contends that the Parade Ordinance's definition of "parade" is not narrowly tailored because it appears to apply to processions of as few as two vehicles, persons, or animals. SEIU argues that, as small processions do not

interfere with traffic safety in the same manner as large processions do, the Ordinance does not narrowly address the putative traffic-safety justification.

We reject this argument factually, because the Parade Ordinance treats small parades differently. Section 45-244 exempts small parades (categorized based on number of participants, length of route, and certain other criteria) from the permit requirement, thus distinguishing their lesser effects on safety and congestion concerns from those of larger parades. This careful distinction is in accord with principles of narrow tailoring. It demonstrates an effort not to "burden substantially more speech than is necessary." Ward, 491 U.S. at 799.

The Parade Ordinance is not unconstitutional as a whole.

SEIU next contends that the Parade Ordinance is not narrowly tailored because it confines downtown weekday parades to two one-hour windows: 10:00 a.m. to 11:00 a.m. and 2:00 p.m. to 3:00 p.m. Houston, Tex., Code of Ordinances ch. 45, art. IX § 45-233(b)(2). Parades outside of downtown may be held during the additional hour of 7:00 p.m. to 8:00 p.m. Id. § 45-234(b)(3).

SEIU complains that these short periods hinder its effective communication of its message by preventing its members from parading during hours when the largest audience for its message are available to receive it. The restrictions do not coincide with peak rush hours, in SEIU's view, while funeral processions are restricted during different time periods that do coincide with rush hour. As a result, the time limits effect a citywide ban on parades between 11:00 a.m. and 2:00 p.m., the middle of the day when parading would be most visible to SEIU's intended audience, as well as banning them before 10:00 a.m. and after 3:00 p.m.

Houston justifies the time limits by claiming they further traffic safety. Also, the City argues, the narrow time limits minimize the problem of discretionary decision making.

Although there are traffic safety interests in confining when parades are held, limiting parades to two one-hour windows is not narrowly tailored. It is an overly restrictive approach to traffic safety for which Houston offers no further justification. Houston does not offer any reason at all for barring parades in the evenings when downtown is relatively quiet.

The time limits on funeral processions underscore this point. Those processions are barred from 7:00 a.m. to 9:00 a.m. and from 4:00 p.m. to 6:00 p.m. These limits presumably are tailored to avoid high vehicular traffic hours. Id. § 45-252. The reasonableness of a municipality's choice of statute "will be viewed 'in the light of less drastic means for achieving the same basic purpose.'" Reeves, 631 F.2d at 386 (quoting Shelton v. Tucker, 364 U.S. 479, 488 (1960)). Even allowing for distinctions between funeral processions and parades, the different time limits for funeral processions illustrate that Houston itself has conceived a less drastic means for achieving the basic purpose of traffic control.

SEIU contends that the two one-hour windows unduly curtail would-be paraders' ability to spread their message, heavily burdening their speech rights without a commensurate safety or traffic benefit. If traffic control services to accommodate parades are limited anyway, restricting when they are permitted to two particular hours out of every twenty-four hours appears to do little to address that concern.

Houston responds that the time limits prevent permitting authorities from having too much discretion. Yet, allowing parades at more times of day does not lead to unbridled discretion by permitting officials, so long as the permitting standards remain in place.

A previous decision of this court, concerning a smaller municipality, invalidated an ordinance barring parades between 6:00 p.m. and 9:00 a.m. on the

basis that it was too restrictive. Beckerman, 664 F.2d at 516-17. There, Tupelo's argument that maintaining public safety was more difficult after dark failed because during the summer, daylight hours extended well past 6:00 p.m.; therefore, the ordinance was not narrowly tailored. Id. Although Tupelo's ordinance permitted parades during twelve hours of the day, we struck the provision because it did not include extra hours for the months of the year when such an inclusion was feasible. Likewise, in Reeves we held that a citywide prohibition on sound amplification that applied fifteen hours a day "cannot be viewed as narrowly tailored." Reeves, 631 F.2d at 385 (internal citation and quotation marks omitted).

Houston has barred downtown parades for all but two one-hour periods a day on weekdays. Its asserted justification of preventing traffic congestion is arguably confined to the morning and evening rush hours. We are not writing on a blank slate when it comes to overly restrictive hours for parades, as Reeves and Beckerman compel us to find invalidity. Houston should "tailor its ordinance to reach those activities that actually cause, or immediately threaten to cause, the consequences it fears." Reeves, 631 F.2d at 384 (emphasis added). As it stands, there is scant connection between the restrictive parade hours and the putative consequences that are the justifications for the Ordinance.

These particular limits on the hours for parades are invalid.

D. Parks Ordinance

SEIU challenges the Parks Ordinance on two grounds: (1) it is unconstitutionally vague, and (2) it is not narrowly tailored to serve a significant government purpose. We need reach only the first contention.

The alleged vagueness is based on the Ordinance's failure to define "public gathering" in a reasonably decipherable manner or to identify discrete areas of

the parks that require permits for public gatherings. Houston, Tex., Code of Ordinances ch. 32, art. III § 32-61. Houston stipulates that its Parks and Recreation Department does not have a list that designates specific areas of the parks for which permits are required. A group cannot know whether it must apply for a permit if the Parks Department has failed to specify which areas of the City's parks require permits. We hold that Houston must identify the areas requiring permits pursuant to Section 32-61(a)(5) or eliminate the provision.

SEIU also highlights that compliance with the permitting duty requires knowing what constitutes a "public gathering" and what areas of the City's parks require permits for such gatherings. See id. § 32-62 (requiring a permit for a "public meeting or gathering in any of the areas [designated] in or pursuant to section 32-61"). The Parks Ordinance is silent on both matters.

Houston asserts that a precise definition is not required. It claims that "public gathering" is a concept so well understood by persons of ordinary intelligence as not to be vague. At some colloquial level, we can agree that "public gathering" is not a mysterious concept. But permitting obligations require more than a loose understanding. We perceive no manner by which a group of reasonable persons, perhaps somewhat small in number, whose purpose is more private than a rally for a popular political candidate and more public than a family lunch, would know what they are obligated to do and to avoid doing. Sections 32-61 and 32-62 are invalid as presently written. It would seem no more difficult to define these terms than it is to define "parade."

Until the City provides the necessary definition of "public gathering" and a designation of the relevant areas of the park to which the permitting requirement applies, the Parks Ordinance's permitting regime, Sections 32-61 to 32-70, are not enforceable.

24

### III. CONCLUSION

We REVERSE the judgment of the district court in part and hold unconstitutional: (1) the Sound Ordinance's two-permits-per-thirty-days limitation; (2) the Parade Ordinance's time limitations, and (3) all the Park Ordinance's permitting requirements. We AFFIRM the district court's judgment in all other respects. The case is REMANDED for further proceedings consistent with this opinion.