# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11335

United States Court of Appeals
Fifth Circuit

**FILED**
August 22, 2017

Lyle W. Cayce
Clerk

RICKY D. MOORE,

      Plaintiff - Appellant

v.

DAVID O. BROWN, in his official capacity as Chief of Police for the Dallas
Police Department; LARRY D. LITTON, individual and official capacity as
Sergeant for the Dallas Police Department; CITY OF DALLAS, TEXAS,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:

Plaintiff Ricky Moore appeals the district court's denial of his motion for preliminary injunction to enjoin the enforcement of two rules affecting his ability to speak in a public park. We find no error on the part of the district court and therefore AFFIRM.

## I. Background

This dispute centers on Plaintiff Ricky Moore's speech rights in Klyde Warren Park, a 5.2-acre park that connects downtown and uptown Dallas, Texas. Despite its relatively small size, the park contains numerous facilities for recreational activities, including two pavilions, a children's park, a

playground, and several open grassy areas, including the Great Lawn. The park is managed and operated by the Woodall Rodgers Park Foundation in accordance with the Woodall Rodgers Deck Plaza Use Agreement. The Use Agreement authorizes the Foundation to issue "reasonable rules and regulations" for the park. Two of these rules mandate when an individual must possess a permit at Klyde Warren Park. The first rule states that "a permit may . . . be required for any activity that is intended to attract an audience (a 'public event')." Second, the Foundation prohibits "structures larger than 4' by 4'" in the park without a permit.

Moore is an evangelical Christian and a branch director of Open-Air Campaigners, a Christian mission organization. In order to spread his Christian message, Moore looks to have conversations with individuals or small groups in busy public places in order to share his faith. Moore generates these conversations with the use of a portable sketch board that displays painted riddles. Moore sets up the sketch board and waits for people to come and ask about the riddle. The sketch board is approximately four feet in width, two feet in length, and six-and-a-half feet in height.

Moore first started going to Klyde Warren Park with his sketch board in early 2013. Moore's location of choice in the park was on or next to Hart Boulevard, which is a pedestrian-only walking path that cuts through the Great Lawn. Moore alleges he was initially able to set up his sketch board and talk to people without incident. But beginning in April 2013, park personnel informed Moore on multiple separate occasions that his expression violated the public event rule. In each instance, Moore was asked to (1) apply for a permit with the Foundation, (2) take his expression to Pearl Lawn, another section of the park, or (3) leave the park entirely. These interactions culminated on April 30, 2015, when Moore was given these same three options by park staff but declined to leave because he believed his expression was protected under the

No. 16-11335

First Amendment. Moore subsequently received a criminal trespass warning from Defendant Sergeant Larry Litton and was prohibited from returning to any area of Klyde Warren Park for ninety days.

Moore subsequently wrote a letter addressed to the Mayor of Dallas, the City Attorney, and the Chief of Police explaining his situation and asserting that the rules were not constitutionally valid. The Foundation responded by defending its actions and suggesting that Moore could engage in his expression on the external sidewalks without a "public event" permit. The Foundation letter stated that Moore would still have to obtain "a permit before erecting a structure on the external sidewalks." Moore was invited to engage in further dialogue, including an in-person meeting. Instead, Moore sued the City of Dallas, Chief of Police David O. Brown, in his official capacity, and Sergeant Litton, in his individual and official capacity.

A day after filing his complaint, Moore filed a motion for preliminary injunction. Defendants subsequently sent Moore a letter before filing a response to his motion "to make clear [the Foundation's] position regarding Mr. Moore's desire to use the Park for his stated purposes." This second letter stated that:

> [a]s we have discussed on numerous occasions, and consistent with Park policies, Mr. Moore is free to engage in the type of activity described in the Complaint anywhere on the external sidewalks of Klyde Warren Park—*including areas of Hart Boulevard* other than the walkway single contiguous to the Great Lawn—provided that his activity does not result in intentional damage to Park property or unduly interfere with a previously-issued permit for the same area.

A footnote further explained that:

> [d]ue to the Park's interest in safety and in avoiding damage to Park property, a permit is generally

> required for structures larger than 4' x 4'.  Based on
> the allegations in Mr. Moore's complaint, the Park is
> happy to issue a long-term permit for the use of his
> sketch board in the locations described above.

The letter closed by stating "[b]ecause Mr. Moore is free to engage in the conduct he has described in areas that are 'on or in close vicinity to Hart Boulevard,' the Park believes that any confusion should now be resolved, and that there is no need for further litigation."

Six days after sending this letter, Defendants filed their response to Moore's motion for preliminary injunction.  In that response, Defendants argued that the public event rule did not apply to Moore and that his challenge to that rule was moot.  The remainder of Defendants' response argued, inter alia, that Moore's use of the sketch board violated the "structure rule," and that the structure rule was constitutional.

The district court denied Moore's motion.  Moore's challenge to the public event rule was held to be moot as Defendants conceded in their response that Moore's activity "does not constitute a public event" and "the City Defendants represent that they will no longer apply the Public Event Rule against Moore." As to the structure rule, the district court first held that Moore failed to demonstrate a substantial likelihood of success on the merits of his First Amendment claim because "Moore has not shown that the Structure Rule, as applied to him, violates his First Amendment rights."  It also held that Moore failed to establish that the structure rule was an unreasonable time, place, or manner restriction.  Finally, the court determined that Moore failed to demonstrate a substantial likelihood of success on the merits of his Fourteenth Amendment claim because Moore failed to demonstrate that the structure rule was unconstitutionally vague.  Moore timely appealed.

No. 16-11335

## II. Standard of Review

We review a district court's denial of a preliminary injunction for an abuse of discretion. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012). In order to obtain a preliminary injunction, a movant must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Factual findings are reviewed for clear error, while legal conclusions are reviewed de novo. *Id.*

Under the clearly erroneous standard, this court upholds findings by the district court that are plausible in light of the record as a whole. *Chemtech Royalty Assocs., L.P. v. United States*, 766 F.3d 453, 460 (5th Cir. 2014). Moore's argument, in essence, is that he is entitled to a preliminary injunction as a matter of law. "Only under 'extraordinary circumstances' will this court reverse the denial of a preliminary injunction." *Anderson v. Jackson*, 556 F.3d 351, 355–56 (5th Cir. 2009) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)).

## III. Discussion

Moore's appeal asserts a number of challenges to the district court's determination that Moore failed to demonstrate a substantial likelihood of success on the merits on his claims that the structure rule and the public event rules were unconstitutional.[1] We agree with the district court's determination.

---

[1] Although both rules were promulgated by the Foundation, a private entity, Moore has not joined the Foundation or any of its employees as defendants and instead sues the City of Dallas and two officers of the Dallas Police Department. Defendants do not argue that the Foundation is a necessary party and do not contest the fact that they sought to enforce at least one of the rules in question. In any event, even if we assume *arguendo* that the Foundation was a government actor for purposes of the constitutionality analysis, we

No. 16-11335

At this early stage in the litigation, Moore has not demonstrated a substantial likelihood of success on his challenges to either rule.

*A. Structure Rule*

The structure rule prohibits "structures larger than 4' by 4'" without a permit. Moore argues that the structure rule is unconstitutional because the rule: (1) is overly broad or not narrowly tailored; (2) grants unbridled discretion; and (3) is unduly vague. None of these arguments, however, constitute "extraordinary circumstances" necessitating the reversal of the district court. *Anderson,* 556 F.3d at 355–56.

*1. The Structure Rule Is Narrowly Tailored and Leaves Open Ample Alternative Channels of Communication*

In concluding that Moore failed to establish a substantial likelihood of success on his First Amendment claim against the structure rule, the district court held that: (1) Moore failed to establish that the structure rule is an unreasonable time, place, and manner restriction; (2) the structure rule affords adequate alternative means of expression; and (3) Moore had not established that Defendants enforced the structure rule in a discriminatory manner or otherwise singled him out for selective prosecution. As part of its holding, the district court found that Defendants have at least two governmental interests in the structure rule: safety concerns and the coordination of multiple uses of a limited space.

Content-neutral regulations of time, place, and manner of expression in a public forum are permitted when they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *Serv. Emp. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010) ("*SEIU*"); *see also Packingham v. North Carolina,* 137

---

would still affirm the district court because we ultimately determine that Moore has failed to carry his burden of demonstrating the unconstitutionality of either rule.

6

S. Ct. 1730, 1736 (2017) (explaining intermediate scrutiny). "In the context of intermediate scrutiny, narrow tailoring does not require that the least restrictive means be used. As long as the restriction promotes a substantial governmental interest that would be achieved less effectively without the restriction, it is sufficiently narrowly tailored." *Id.* Rules that incidentally burden speech are evaluated in terms of their general effect. *Baby Dolls Topless Saloons, Inc. v. City of Dallas*, 295 F.3d 471, 485 (5th Cir. 2002). But if a substantial portion of the burden on speech does not advance the goals of the rule, the rule is not narrowly tailored. *See Knowles v. City of Waco*, 462 F.3d 430, 434 (5th Cir. 2006) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

Here, we agree with the district court's conclusion that the structure rule meets the requirements of a content-neutral regulation of time, place, and manner. The Defendants' interests in safety and the coordination of uses of extremely limited space are substantial. *See Thomas v. City of Chi. Park Dist.*, 534 U.S. 316, 322–23 (2002); *Lauder, Inc. v. City of Houston*, 751 F. Supp. 2d 920, 930 (S.D. Tex. 2010) ("The evidence in the present record amply supports a finding that the City's interests in public safety and aesthetics are substantial."), *aff'd*, 670 F.3d 664 (5th Cir. 2012) (per curiam). As to narrow tailoring, requiring individuals who plan to bring objects larger than four feet by four feet to acquire a permit advances the city's safety and coordination interests. Critical to this analysis is the relevant fact that Klyde Warren Park has very limited open spaces. Klyde Warren Park is divided by and filled with walking paths, gardens, a restaurant, a stage, and a separate children's park. When these areas are removed, the remaining open areas make up a small space in a large city. Despite the relatively small size of the park, over one million people visited the park in 2015, making the logistics of ensuring the safety and security of all patrons a complex undertaking of which the structure

rule is a part.  Requiring a permit for these structures advances interests in both safety and coordination by allowing park managers to control how many structures are in the park at any given time and where in the park those structures are located.  Finally, Moore still has an ample alternative in the form of the Pearl Lawn, located a short distance away, where Moore can engage in his expression without a permit at any time.

Moore's arguments to the contrary do not change our determination. Moore argues that that the Defendants fail to demonstrate how banning his sketch board furthers their safety interest.  But this argument improperly frames the inquiry: challenged rules must be evaluated in terms of their *general* effect.  *See LLEH, Inc. v. Wichita Cty.*, 289 F.3d 358, 368 (5th Cir. 2002) ("The six-foot buffer may have a significant impact on Babe's; but . . . 'regulations that burden speech incidentally. . . must be evaluated in terms of their *general* effect.'" (quoting *United States v. Albertini*, 472 U.S. 675, 688–89 (1985)).  Moore also challenges the district court's rejection of his factual argument that multiple items are allowed in Klyde Warren Park every day that he claims violate the structure rule.  The district court did not abuse its discretion in making this determination: there is no evidence that those items were in violation of the structure rule or improperly in the park and Moore offered no evidence demonstrating that the park treated others trying to use the same area of Hart Boulevard for expression in a different manner.  Finally, we find unpersuasive Moore's argument that Pearl Lawn is not an ample alternative because of reduced foot traffic in that area.  *See Int'l Women's Day March Planning Comm. v. City of San Antonio*, 619 F.3d 346, 372 (5th Cir. 2010) ("[A]n alternative venue for speech may still be constitutionally adequate, even when there is a reduction in the potential audience for speech in the alternative venue." (citation omitted)).  The structure rule is narrowly tailored to promote the substantial interests of Defendants and leaves open

ample alternatives.   Moore therefore has not demonstrated a substantial likelihood of success on the merits on this ground.

### 2. Moore's Claim of Unbridled Discretion Fails as the Structure Rule Lacks a Close Nexus to Expression[2]

The determination that the structure rule passes intermediate scrutiny does not necessarily end our inquiry into constitutionality.  "Of course even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression."  *Thomas*, 534 U.S. at 323.  Thus, "a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988).  In such a case, "standards controlling the [enforcing agent]'s discretion must be required," or the enactment is unconstitutional for vesting unbridled discretion in its enforcing agents.  *See id.* at 760; *see also Thomas*, 534 U.S. at 323–24.  A regulation that requires a speaker to obtain a permit before speaking is a prior restraint that is unconstitutional where, due to a lack of "narrow, objective, and definite standards," broad or unbridled discretion is granted, effectively authorizing the suppression of speech prior to its expression.  *See SEIU*, 595 F.3d at 596 (quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969)).

Moore argues that the structure rule has no objective standards and has unclear exceptions which improperly grant unbridled discretion to Defendants. Under *City of Lakewood*, a plaintiff may bring a facial unbridled discretion challenge if two requirements are met.  First, the plaintiff must demonstrate a First Amendment censorship risk of either "self-censorship by speakers in

---

[2] Although the district court did not explicitly address Moore's unbridled discretion claim, we address it now for the sake of completeness.

order to avoid being denied a license to speak" or "difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied' without standards by which to measure the licensor's action." *City of Lakewood*, 486 U.S. at 759. Second, the "law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." *Id.* Here, the structure rule does not have a close nexus to expression at all. The structure rule is more concerned with the management of certain large items in Klyde Warren Park, regardless of any expression that those items may contain. This is demonstrated by the various other Foundation rules that include tents and tables as examples of structures. Because he cannot demonstrate a close enough nexus between the structure rule and expression, Moore's unbridled discretion claim fails.

*3. The Structure Rule Is Not Unconstitutionally Vague*

The district court rejected Moore's challenge to the structure rule under the Fourteenth Amendment and held that "Moore has not demonstrated that the Structure Rule is unconstitutionally vague." We agree. Because the structure rule arguably implicates Moore's First Amendment rights and can result in a trespass citation or quasi-criminal penalty, we apply the standard for a vagueness challenge to a criminal statute. *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008); *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 508 (5th Cir. 2001). A criminal law is unconstitutionally vague if it (1) "fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited" or (2) "is so indefinite that it allows arbitrary and discriminatory enforcement." *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 224–25 (5th Cir. 2009) (quoting *Women's Med. Ctr. of N.W. Hous. v. Bell*, 248 F.3d 411, 421 (5th Cir. 2001)).

Here, the structure rule is not unconstitutionally vague.  Given the structure rule's across-the-board applicability to all items larger than four feet by four feet, an individual would have a reasonable opportunity to know that any item fitting that description likely cannot be brought into the park without first obtaining a permit.  By its very nature, "structure" appears to be a broad term used to encompass any number of different items that the Defendants hoped to prevent from entering the park and cluttering up the available space. *See Int'l Soc'y For Krishna Consciousness of Hous., Inc. v. City of Houston*, 689 F.2d 541, 553 (5th Cir. 1982) ("The terms in question have a common, well-understood meaning sufficiently plain to put on fair notice those subject to the ordinance.").  Finally, we disagree with Moore's contention that Defendants' decision to argue that the structure rule applies after Moore initiated suit demonstrates the rule's vagueness.  This argument does not accurately portray the facts, as before the litigation ever began, Defendants stated in their response to Moore's initial letter that the structure rule may apply.  But more importantly, it does not automatically follow that Defendants' decision to focus on the structure rule's application to Moore demonstrates its vagueness.

At bottom, Moore cannot demonstrate a substantial likelihood of success on the merits in his constitutional challenge to the structure rule.  The district court therefore did not err in denying Moore's preliminary injunction in favor of Defendants.

## B. Public Event Rule

The district court held that Moore's claim regarding the public event rule was moot based on the Defendants' concession that Moore's activity did not constitute a public event.  We agree.

"[A]ny set of circumstances that eliminates the actual controversy after the commencement of a lawsuit" generally "renders the claim moot." *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *Ctr. for Individual*

*Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)).   A defendant making such a claim of mootness "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."   *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).   A government entity, however, bears a lighter burden to prove that challenged conduct will not recur.   *See Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014).   This is because "Government actors in their sovereign capacity and in exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."   *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011).[3]   The goal of this inquiry is to determine whether Defendants' actions are either "mere litigation posturing" or actually extinguish the controversy.   *See Fontenot*, 777 F.3d at 748 (quotation omitted).

In their response to Moore's motion for preliminary injunction, Defendants explained that once Moore filed his complaint and explicitly spelled out his intended form of speech, the Defendants and their counsel had the opportunity to determine whether that speech actually violated the public event rule.   Defendants acknowledged that "there has been some confusion and miscommunication about the appropriate terminology" between Moore and members of the park staff given that the staff believed Moore wanted to speak to a large crowd.   But in light of the clarity brought by Moore's complaint, "the park . . . made clear that its public event rule does not apply to Plaintiff's desired activity."

---

[3] We also generally defer to a narrowing construction by government officials that avoids a finding of unconstitutionality.   *See, e.g., Voting for Am., Inc. v. Steen*, 732 F.3d 382, 396–97 (5th Cir. 2013) (collecting cases).

No. 16-11335

This behavior by Defendants is sufficient to moot Moore's challenge to the public event rule.  Despite Moore's arguments to the contrary, Defendants' actions are not litigation posturing.  Defendants appear to have sought to protect the park and maintain it as a "pedestrian-friendly, urban linkage park and plaza" that "provides a vibrant destination for cultural, civic, and social opportunities to the City's citizens."  In attempting to promote this goal, Defendants mistakenly barred constitutionally-protected conduct but then realized the error of their ways very early in the litigation.  As government actors, Defendants' statement of non-enforcement is entitled to a presumption of good faith.  *Sossamon*, 560 F.3d at 325.  The Defendants' promise to not prosecute Moore for his one-on-one and small group communication is therefore sufficient to meet Defendants' "lighter" burden to prove that the challenged conduct will not recur.  *Stauffer*, 741 F.3d at 582.  The district court thus did not err when it held that Moore's claims against the public event rule were moot.[4]

## IV. Conclusion

This appeal comes to us at an initial stage in the litigation process. Moore still has the opportunity to return to the district court, collect more evidence, and pursue his claims on the merits.  At this stage, however, Moore has failed to carry his burden to demonstrate that the district court erred in concluding that he did not demonstrate a substantial likelihood of success on the merits of his challenges to the structure rule and the public event rule.

AFFIRMED.

---

[4] Moore also argues before us that he still has both a live claim against the public event rule for nominal damages and a live facial challenge to the public event rule.  But Moore waived these arguments by failing to raise them before the district court, and we do not consider them on appeal.  *Celanese Corp. v. Martin K. Eby Constr. Co., Inc.*, 620 F.3d 529, 531 (5th Cir. 2010).