# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2020

Lyle W. Cayce
Clerk

No. 19-40776

BELEN GONZALES, *individually*; PEDRO GONZALES, JR., *individually*; C.G., *by and through his parents and legal guardians*; D.G.,

*Plaintiffs—Appellees*,

*versus*

MATHIS INDEPENDENT SCHOOL DISTRICT,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:18-CV-43

Before OWEN, *Chief Judge*, and HIGGINBOTHAM and WILLETT, *Circuit Judges*.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

Two brothers and their parents sought injunctive relief under the Texas Religious Freedom Restoration Act to prevent Mathis Independent School District from excluding them from extracurricular activities based on their religiously motivated hairstyles. The district court granted preliminary injunctions to both brothers, and the school district appealed. We uphold the grant of injunction to one brother and vacate as to the other.

**I.**

C.G. and D.G. are public school students enrolled in Mathis Independent School District ("MISD"). The brothers, along with their parents Pedro and Belen Gonzales, are Roman Catholics of Hispanic descent. When C.G. was an infant and Belen was pregnant with D.G., the Gonzaleses learned that C.G. had contracted bacterial meningitis, a potentially life-threatening infection. Seeking God's protection in both the pregnancy and C.G.'s illness, Pedro and Belen made a *promesa* (promise) that they would leave a lock of both brothers' hair uncut. The *promesa* or *manda*, an established practice among American Catholics of Hispanic descent, involves petitioning God with a specific request, often related to a difficult medical condition, with a vow to fulfill certain stipulations in return. That the Gonzaleses' religious belief, including the *promesa*, is sincerely held is not challenged here.

Pedro and Belen observed the *promesa* until the brothers reached sixth grade, leaving a lock of hair on the backs of their heads uncut and braided.[1] In sixth grade, the brothers were given the choice to cut their braids or to adopt the *promesa* as their own. Both chose the latter, and they continue to observe the *promesa* to this day, describing it as an important part of their faith.[2]

MISD's dress code prohibits male students' hair from "extend[ing] beyond the top of the collar of a standard shirt in back." The district's Extracurricular Handbook makes participation in extracurricular activities contingent on compliance with this grooming policy. From the time the brothers entered kindergarten until 2017, when they were in middle school,

---

[1] Although not twins, the brothers are in the same grade.

[2] The brothers wear their braids tucked into the backs of their shirts, making them "hardly noticeable" at school.

MISD granted religious exemptions that allowed them to attend school and participate in extracurricular activities without restriction. Then, in August 2017, an MISD coach told C.G. that he could not play football unless he cut his hair. The Gonzaleses challenged the hair restriction later that month, with their attorney filing a grievance by fax with the school district and notifying the superintendent by letter that the Gonzaleses were "formal[ly] protest[ing]" the "decision to deny [C.G.] a religious exception to the school policy governing student's hair length and athletic participation." MISD denied the Gonzaleses' administrative petition on September 19 and then denied their appeal on November 7.

On December 1, 2017, while attending an after-school meeting of the science team, D.G. was called to the front office and handed a letter informing him and his parents that he would "not be allowed to participate in UIL [University Interscholastic League] extracurricular activities due to the fact of not following MISD Extracurricular handbook grooming and dress standards."[3] Later that month, the family was informed that C.G. was likewise barred from "participat[ing] in any activities outside of school hours." As a result, C.G. was unable to play in the fall band concert and initially received a failing grade.

## II.

C.G. and his parents filed suit in state court on January 9, 2018, asserting claims under the Texas Religious Freedom Restoration Act ("TRFRA") and the First and Fourteenth Amendments to the federal Constitution. MISD removed the case to federal court, invoking the district court's federal question jurisdiction over the constitutional claims and its

---

[3] MISD's Student Handbook describes UIL as "a statewide association overseeing inter-district competition" in all academic, athletic, and musical activities.

supplemental jurisdiction over the TRFRA claim. MISD then moved to dismiss the case for failure to state a claim. In March 2018, the Gonzaleses filed an amended complaint adding D.G. as a plaintiff. The school district argued in its motion to dismiss that the Gonzaleses had failed to plead that they satisfied TRFRA's pre-suit notice requirements, but the district court rejected this contention, finding that the Gonzaleses had complied with the statute and denied the motion to dismiss.

Following discovery, MISD moved for summary judgment in August 2018. The district court granted summary judgment for MISD on the plaintiffs' First Amendment claims but denied the motion as to the TRFRA and Fourteenth Amendment claims. Then, at the start of the 2019–2020 school year, the Gonzaleses sought preliminary injunctive relief under TRFRA "enjoining MISD from prohibiting the boys' participation in extracurricular activities." MISD moved to strike the motion, arguing that the Gonzaleses had not complied with the statute's pre-suit notice requirements and the school district was therefore "immune from Plaintiffs' TRFRA cause of action." The district court rejected MISD's argument and granted a preliminary injunction for each of the brothers. MISD appealed. Because MISD appeals the denial of its immunity defense, we have jurisdiction.[4]

## III.

To obtain a preliminary injunction, a litigant must demonstrate four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that

---

[4] *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013).

No. 19-40776

the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest."[5] Here, MISD has waived its arguments as to the merits of the Gonzaleses' preliminary injunction motion.[6] It challenges only whether the district court had jurisdiction, a question we review *de novo*.[7]

## IV.

MISD contends that the district court lacked jurisdiction to hear this case because it enjoys governmental immunity under Texas law. Although playing no major role here, it signifies that "[i]n Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether."[8] Both forms of immunity are waivable, and we apply Texas law to assess whether a waiver has occurred.[9]

---

[5] *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

[6] MISD does not mention three of the four preliminary injunction elements. It does contend, without authority, that the brothers' exclusion from extracurricular activities would not result in a substantial threat of irreparable injury. However, MISD waived this argument by failing to properly raise it below. In its motion to strike the Gonzaleses' preliminary injunction request, MISD asserted that "the only irreparable injury that has arisen between the time of filing and today is new counsel has joined Plaintiffs' team." This conclusory barb is not enough to preserve the issue for appellate review. *See City of Hearne v. Johnson*, 929 F.3d 298, 300 n.1 (5th Cir. 2019) (internal alterations and quotation marks omitted) ("Plaintiffs waive an argument when they fail to argue or brief it to the district court and instead only make general reference to it.").

[7] *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).

[8] *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

[9] *Morgan*, 724 F.3d at 582.

No. 19-40776

In TRFRA, the Texas Legislature stated its intention to waive both "immunity to suit and from liability" subject to the following condition: "[a] person may not bring an action to assert a claim under this chapter unless, 60 days before bringing the action, the person gives written notice to the government agency by certified mail, return receipt requested."[10] We dealt with the scope and effect of this pre-suit notice provision under similar circumstances in *Morgan v. Plano Independent School District*.[11] There, parents of public school students brought TRFRA claims against the school district without having complied with the precise demands of the pre-suit notice provision. On appeal, the parents argued that the pre-suit notice provision governed only the waiver of sovereign, not governmental, immunity and that the provision, even if applicable, is not jurisdictional.[12] We rejected both contentions. Although TRFRA speaks only of sovereign immunity, we concluded that the pre-suit notice provision also applies to governmental immunity.[13] We further held that TRFRA's notice requirement "is jurisdictional under Texas law," and thus the waiver of governmental immunity is conditioned on plaintiffs' strict compliance with the notice provision.[14]

It is undisputed that neither C.G. nor D.G. strictly complied with TRFRA's pre-suit notice provision.[15] Thus, in MISD's view, *Morgan*

---

[10] Tex. Civ. Prac. & Rem. Code §§ 110.006(a), 110.008(a).

[11] 724 F.3d 579.

[12] *Id.* at 586–87.

[13] *Id.* at 587.

[14] *Id.* at 581, 585.

[15] C.G. did not comply with the notice requirement because his August 2017 grievance was submitted by fax rather than certified mail. D.G. did not give separate pre-suit notice to MISD.

requires us to find that the school district did not waive immunity, and the district court lacked supplemental jurisdiction over the TRFRA claims. While *Morgan*'s holding regarding the jurisdictional force of the notice requirement controls here, that does not end our inquiry. We also must address the district court's holding that the Gonzaleses' claims fall within a statutory exception to pre-suit notice because the school's imminent action burdening the boys' religious rights left the Gonzaleses without time to give pre-suit notice. The applicability of this exception controls the outcome of this appeal, and we address the exception's applicability to the two injunctions separately, turning first to C.G.'s.

### A.

TRFRA permits plaintiffs to file suit without pre-suit notice where

(1) the exercise of governmental authority that threatens to substantially burden the person's free exercise of religion is imminent; and

(2) the person was not informed and did not otherwise have knowledge of the exercise of the governmental authority in time to reasonably provide the notice.[16]

The imminence requirement is satisfied by MISD's stated intention to immediately and indefinitely bar C.G. from extracurricular activities. As to the second prong of the pre-suit notice exception, the decisive question is when the Gonzaleses were informed of MISD's exercise of governmental authority. The district court found that prior to December 2017, when the family was notified that both brothers were barred from *all* extracurricular activities, the Gonzaleses reasonably believed that MISD was only concerned with C.G.'s participation in football, not activities like band and science club

---

[16] Tex. Civ. Prac. & Rem. Code § 110.006(b).

No. 19-40776

that have academic consequences.[17] Thus, they did not have time to provide 60 days' notice before filing suit.[18]

MISD now argues that the district court ignored contrary evidence in the record indicating that C.G. *did* have time to give 60 days' notice, namely the following portion of Belen Gonzales's re-cross testimony at the preliminary injunction hearing:

> [Gonzales]: The things that occurred with C.G. happened in the beginning of the school year, and with D.G., that's when it happened in the December month. So after, you know, getting with our attorney and the holidays and stuff getting out of the way, that's when everything was addressed.
>
> [MISD counsel]: Okay. And so you knew at the time when you filed this grievance that both your children were going to be denied extracurricular activities, right?
>
> [Gonzales]: Yes.
>
> [MISD counsel]: And this grievance was filed more than 60 days prior to the time that you filed your suit, correct?

---

[17] The facts concerning the Gonzaleses' notice of MISD's actions distinguish this case from our imminence analysis in *Morgan*. There, the parents had notice of the policy underlying their TRFRA claims in December 2003, when the school prevented a student from distributing candy canes with a religious message at a holiday party. *Morgan*, 724 F.3d at 581. Yet, the parents waited until December 2004, days prior to that year's holiday party, to file suit. *Id.*

[18] The district court also found that Eleventh Amendment Immunity is waived when a state defendant removes a case from state to federal court. While true in the abstract, it has no purchase here. MISD does not possess Eleventh Amendment sovereign immunity; rather, as described above, school districts are protected by the distinct concept of governmental immunity. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) ("Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts.").

No. 19-40776

[Gonzales]: I believe so.

In MISD's view, this testimony bars C.G. from claiming he did not have time to provide pre-suit notice.

We must uphold the district court's factual findings so long as they "are plausible in light of the record as a whole."[19] As to C.G., the district court's conclusion that there was not "time to reasonably provide 60-day [] notice" is plausible in light of the record as a whole. Belen's answers to counsel's examination are not dispositive because it is unclear whether she understood counsel's question as referring to August or December. Moreover, there was other evidence in the record supporting the Gonzaleses' position. For example, their attorney's letter to MISD and their grievance were specific to C.G.'s participation in athletics, and Belen testified that they first learned C.G. was barred from all other extracurricular activities in December 2017. And, up until that point, both brothers were participating in non-athletic extracurriculars. In light of this evidence, the district court's factual finding was plausible, and with the deference due its factfinding, we agree with its conclusion that C.G. satisfied the statutory exception to TRFRA's pre-suit notice requirement. Because C.G. comes within the exception, MISD's governmental immunity is waived, and there is no jurisdictional defect in C.G.'s TRFRA claim.[20]

**B.**

In its reply brief, MISD argues that regardless of whether C.G.'s suit was proper, the district court lacked jurisdiction over D.G.'s TRFRA claim

---

[19] *Moore*, 868 F.3d at 403.

[20] *See* Tex. Civ. Prac. & Rem. Code § 110.008(a) (West) ("Subject to Section 110.006, sovereign immunity to suit and from liability is waived and abolished . . . .").

because he was added to the suit in March 2018, two months after the case was filed. Thus, in MISD's view, even if D.G. was unaware of his exclusion from extracurriculars until December 2017, he "certainly had sixty days to send proper pre-suit notice" before joining the suit. The district court did not consider how D.G.'s late addition to the suit affected his ability to comply with the pre-suit notice requirement.[21]

D.G.'s noncompliance with TRFRA's pre-suit notice requirement requires that we vacate the district court's preliminary injunction as to him. This disposition may prove to be of little practical consequence; both brothers are constrained by MISD's hair policy and should the district court ultimately conclude that the policy is invalid under TRFRA, D.G. may enjoy the benefits from that ruling and the strong protections afforded students by TRFRA going forward, matters not now before this Court. However, our case law requiring strict compliance with TRFRA's prerequisites to suit here control.[22]

## V.

We affirm the district court's preliminary injunction as to C.G. and vacate the preliminary injunction as to D.G.

---

[21] D.G. was added as a plaintiff in an amended complaint filed by the Gonzaleses in March 2018 without leave of court. MISD argued in its motion to dismiss that D.G. was not properly before the court because no leave to amend had been sought. The district court did not address the argument.

[22] *See Morgan*, 724 F.3d at 585.