# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 6, 2021

Lyle W. Cayce
Clerk

No. 20-50702

Ryan Denton,

*Plaintiff—Appellant*,

*versus*

City of El Paso, Texas,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CV-85

Before Wiener, Elrod, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:*

Ryan Denton is an evangelical Christian, and proselytizing is a tenet of his faith. When he arrived at the El Paso Art and Farmers Market to proselytize, City officials told Denton that City policy prohibited proselytizing within the Market's perimeter. Denton sued and moved for a preliminary injunction to restrain the City and its agents from prohibiting

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50702

proselytizing at the Market. The district court denied his motion, and Denton filed this interlocutory appeal. For the reasons articulated herein, we VACATE the district court's order denying a preliminary injunction and REMAND with directions to the district court to grant a preliminary injunction enjoining El Paso from enforcing the City's policy of prohibiting religious proselytizing at the Market.

I.

Established in 2011, the El Paso Art and Farmers Market ("the Market") is a year-round, weekly outdoor event managed by the City of El Paso through its Museum and Cultural Affairs Department ("MCAD"). Farmers and merchants sell their wares from booths that they obtain through an application process with MCAD. The Market takes place on public streets and does not require a ticket for entry. Although the Market closed due to the COVID-19 pandemic, it reopened on April 10, 2021.

Ryan Denton is an evangelical Christian. Proselytizing in public places is a tenet of his faith. He proselytizes through literature distribution, conversation, and unamplified preaching. On August 24, 2019, Denton went to the Market to proselytize. Denton stood within the Market perimeter and proselytized for a short time. Then a law enforcement officer with the Sheriff's Department and an MCAD employee approached Denton. Invoking City policy, they told Denton that he could not proselytize within the Market perimeter, that he would be arrested if he continued proselytizing within the Market perimeter, and that he could continue his activities at any area directly outside the Market perimeter. Denton declined to relocate and left.

Subsequently, Denton, through counsel, sent a demand letter to El Paso officials detailing the incident and requesting "written assurance . . . that El Paso will allow him to speak on public streets inside the Farmer's

2

Market and other events that are free and open to the public." The City declined Denton's demand, and this lawsuit followed. In his complaint, Denton alleged that the City's policy wrongfully prevented him from proselytizing at the Market in violation of his constitutional rights, including his rights to free speech, free exercise of religion, and due process. Denton also moved for a preliminary injunction to restrain the City and its agents from prohibiting religious proselytizing at the Market. After holding a hearing and in a comprehensive order, the district court denied Denton's motion for a preliminary injunction. *Denton v. City of El Paso*, 475 F. Supp. 3d 620, 646 (W.D. Tex. 2020). Denton timely filed this interlocutory appeal.

## II.

"In order to obtain a preliminary injunction, a movant must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest." *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017).

This court reviews the denial of a preliminary injunction for abuse of discretion. *Robinson v. Hunt Cnty.*, 921 F.3d 440, 451 (5th Cir. 2019). "Factual findings are reviewed for clear error, while legal conclusions are reviewed de novo." *Moore*, 868 F.3d at 403. "Under the clearly erroneous standard, this court upholds findings by the district court that are plausible in light of the record as a whole." *Id.* "[A] district court clearly errs in its factual findings if 'an appellate court is left with the definite and firm conviction that a mistake has been committed.'" *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 296 (5th Cir. 2012) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).

No. 20-50702

A.

We first turn to Denton's likelihood of success on the merits of his free speech claim. Denton seeks to speak at the Market, which takes place on El Paso's public streets and which the parties agree is a traditional public forum. The level of scrutiny with which we review a restriction on speech in a traditional public forum turns on whether the restriction is content based or content neutral.

A restriction is content neutral if it "serves purposes unrelated to the content of expression . . . even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). In contrast, a restriction is content based if it is "based on 'the specific motivating ideology or the opinion or perspective of the speaker'" or "prohibit[s] . . . public discussion of an entire topic." *Reed v. Town of Gilbert*, 576 U.S. 155, 168–69 (2015) (first quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); then quoting *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980)).

"[T]he crucial first step in the content-neutrality analysis" is determining whether the law is content neutral or content based on its face. *Id.* at 165. A restriction on speech is content based "on its face" if it "defin[es] regulated speech by particular subject matter." *Id.* at 163. When a restriction is content based on its face, the government's purpose is irrelevant. *Id.* at 166.

If the restriction is content based, it receives strict scrutiny: the government "must show that its [restriction] is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). Narrow tailoring requires that the regulation be the least restrictive means available to the government. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S.

803, 813 (2000). On the other hand, if the restriction is content neutral, it receives intermediate scrutiny: the government must show that its restriction is "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45; *see also Moore*, 868 F.3d at 403–04.

Whether the restriction on speech—here, the City's policy[1]—is content based or content neutral turns on the scope and nature of the policy, which the parties dispute. Denton argues that the City's policy is to prohibit all religious proselytizing within the Market's perimeter. The City argues that its policy is to prohibit disruptive conduct within the Market's perimeter. The district court agreed with the City, finding that the City's policy was not a categorical ban on proselytizing but rather that "the policy prevents only two things: 1) setting up at a fixed location without obtaining advance permission from MCAD and 2) calling out to passersby." *Denton*, 475 F. Supp. 3d at 639. Our review of the record, however, leaves us with the "definite and firm conviction" that the district court committed clear error in its factual finding as to the scope and nature of the City's policy. *Opulent Life Church*, 697 F.3d at 296; *Moore*, 868 F.3d at 403.

According to the Statement of Undisputed Facts that the parties submitted to the district court, the City does not dispute that "El Paso rules list 'fundraising,' 'political campaigning,' and 'religious proselytizing' as

---

[1] The policy at issue in this case has not been formally enacted as a City ordinance. An El Paso ordinance does, however, authorize the city manager or a designee "to create an outdoor artist market permitting vendors to sell handmade or hand assembled merchandise" and "to establish artist market procedures . . . for its operation." EL PASO, TEX. MUN. CODE § 2.40.100(B), *available at* https://bit.ly/2T55H4T (last visited May 24, 2021). The ordinance also authorizes MCAD "to temporarily close the public right-of-way in the Union Plaza Area for the purpose of any artist market." *Id.* § 2.40.100(D)(3).

No. 20-50702

First Amendment activities that are barred from the Market." The City, therefore, categorically disallows any proselytizing in the Market.

Indeed, the City's pre-litigation correspondence with Denton confirms this categorical exclusion. In a letter to Denton, the City stated that it "does not allow activities such as protesting, campaigning, lobbying, proselytizing, or any other activity that could cause a disruption of performances, vending, and/or operations, or pose a potential safety issue." Although the City asserts that its policy is merely one that prevents disruptive conduct, the policy is actually a categorical ban on proselytizing. As characterized by the City, the policy prohibits all proselytizing on the assumption that it will be disruptive, rather than prohibits conduct because it is disruptive.

Given the City's characterization of its policy in the Statement of Undisputed Facts and its letter to Denton, the district court clearly erred in finding that the City's policy is merely one that prohibits potentially disruptive speech. *Denton*, 475 F. Supp. 3d at 639. Accordingly, we find that the City's policy is content based because it "applies to particular speech because of the topic discussed or the idea or message expressed"—here pro-religious speech. *Reed*, 576 U.S. at 163. Moreover, the City's policy is content based on its face because it "defin[es] regulated speech by particular subject matter"—religious proselytization. *Id*. The City's "innocuous justification" of its policy—that it is merely trying to prevent disruptive speakers in the Market—does not save the policy. *Id*. at 166. When a restriction is content based on its face, the government's purpose is irrelevant. *Id*.

Because its policy is content based, El Paso "must show that its [restriction] is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry*, 460 U.S. at 45. Narrow tailoring

requires that the regulation be the least restrictive means available to the government. *Playboy Ent.*, 529 U.S. at 813. El Paso fails to make this showing.

It is unclear whether the City has asserted a compelling government interest. We need not decide this issue because, even assuming that it did assert a compelling government interest, a prior restraint of speech based on a viewpoint is unlikely to be the least restrictive means of regulation available.

Courts disfavor wholesale bans on types of expression protected by the First Amendment, and such bans are usually invalidated on the ground that they clearly fail a "least restrictive means" analysis. *See, e.g.*, *Schneider v. Town of Irvington*, 308 U.S. 147, 160–65 (1939) (invalidating a ban on handbill distribution on public streets because laws penalizing littering and fraud were less intrusive means of serving the government's interests); *Martin v. City of Struthers*, 319 U.S. 141, 145–46 (1943) (invalidating a ban on door-to-door handbill distribution because laws penalizing trespass and fraudulent solicitation were less intrusive means of serving the government's interest); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430 (1993) (invalidating an ordinance prohibiting newsracks dispensing commercial handbills that amounted to a "sweeping ban that bars from its sidewalks a whole class of constitutionally protected speech"); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 337 (2010) (invaliding an "outright ban" on specific types of corporate political speech); *Ward*, 491 U.S. at 799 n.7 (upholding a sound amplification ordinance because it was not a ban on "all concerts, or even all rock concerts, but instead focuse[d] on the source of the evils the city s[ought] to eliminate—excessive and inadequate sound amplification—and eliminate[d] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils"); *cf. Ali v. Stephens*, 822 F.3d 776, 786–94 (5th Cir. 2016) (holding that a correctional facility's outright ban on four-inch beards violated RLUIPA because it was not the least restrictive means of furthering the government's

compelling interest). For that reason, the City's policy is likely not narrowly tailored. *See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 662 (1981) (Brennan, J., concurring in part and dissenting in part) (arguing that the State's wholesale prohibition on literature distribution outside of state fair booths was not narrowly tailored because the State, to advance its asserted interest of preventing disorder, could have prohibited distribution at just entrance and exit points or limited the number of persons distributing an organization's literature).

In sum, Denton has demonstrated a substantial likelihood of success on the merits of his free speech claim. *See Moore*, 868 F.3d at 402–03.

## B.

We now turn to the remaining three preliminary injunction requirements: Denton must show "a substantial threat of irreparable harm if the injunction does not issue," "that the threatened injury outweighs any harm that will result if the injunction is granted," and "that the grant of an injunction is in the public interest." *Moore*, 868 F.3d at 402–03.

First, Denton has satisfied the irreparable harm requirement because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Opulent Life Church*, 697 F.3d at 295 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Next, because we conclude that Denton's harm is irreparable, El Paso "would need to present powerful evidence of harm to its interests to prevent" Denton from showing that the threatened injury outweighs any harm El Paso would suffer as a result of the injunction. *Id.* at 297. El Paso does not present such evidence. It argues that it has met its burden through the MCAD Assistant Director's affidavit that "recites past instances of disruptive conduct having caused problems at the market." But vague assertions of "maintaining public safety" and "preserving the character of a

public space for the enjoyment of its citizens" do not constitute "powerful evidence of harm to its interests." *Id.*

Finally, Denton has satisfied the fourth preliminary injunction requirement because "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 298 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)).

III.

Because Denton has demonstrated that he is entitled to immediate injunctive relief based on his free speech claim, we do not reach his free exercise or due process claims. We VACATE the judgment of the district court denying Denton's request for a preliminary injunction and REMAND for entry of relief.